JOHN R. CHRISCHILLES, appellant, v. DAVID J. GRISWOLD, appellee.

No. 52274.

(Reported in 150 N.W.2d 94)

April 4, 1967.

McMahon & Cassel, of Algona, for appellant.

Shumway, Kelly & Fristedt, of Algona, Vennum, Newhall, Ackman & Goetz, of Minneapolis, Minnesota, and Alan Loth, of. Fort Dodge, for appellee.

MASON, J.—John R. Chrischilles, a resident of Iowa, filed his petition at law to recover damages allegedly sustained as the result of improper and negligent design and specifications furnished by defendant David J. Griswold, an architect registered to practice in Iowa although a resident of Minnesota.

From the petition it appears that on March 3, 1959; plaintiff and defendant executed a contract at Algona in connection with the construction of plaintiff's new home in Kossuth County. Under the written agreement defendant was to provide architectural services including the design and detailing of the new residence to be constructed. Construction of the residence was completed in accordance with the plans and specifications provided by defendant in the fall of 1960. In December 1964 plaintiff became aware of water dripping through the ceiling of the home. Investigation revealed the water was the result of condensation in the roof area and the deck boards on the roof were rotten because of excessive moisture. Defendant was notified and submitted a sketch of specifications in an effort to remedy the situation. Plaintiff claims his damages were the direct result of improper and negligent design and specifications prepared by defendant who refused to repair the damages.

Service of original notice was made under section 617.3, Code, 1966. An original notice was served on defendant by filing

a copy thereof September 16, 1965, with the Iowa secretary of state. September 17 notice of such filing with the secretary with an original notice and copy of petition attached were mailed by registered mail to defendant at his Minneapolis address. November 12, 1965, defendant filed his special appearance, alleging the court had no jurisdiction over him under this section; that this statute was unconstitutional if applied retroactively prior to July 4, 1963, its effective date. No contention is made that plaintiff did not follow the provisions of the Code. The trial court sustained the special appearance and plaintiff appeals.

I. The question presented is whether the Iowa court has jurisdiction of Griswold under section 617.3. This section as amended by the Sixtieth General Assembly, chapter 325, section 1, and as now appearing in the 1966 Code, provides in part:

"If a nonresident person makes a contract with a resident of Iowa to be performed in whole or in part by either party in Iowa, or if such person commits a tort in whole or in part in Iowa against a resident of Iowa, such acts shall be deemed to be doing business in Iowa by such person for the purpose of service of process or original notice on such person under this section, and shall be deemed to constitute the appointment of the secretary of state of the state of Iowa to be the true and lawful attorney of such person upon whom may be served all lawful process or original notice in actions or proceedings arising from or growing out of such contract or tort. * * * The making of the contract or the committing of the tort shall be deemed to be the agreement of such * * * person that any process or original notice so served shall be of the same legal force and effect as if served personally upon such defendant within the state of Iowa."

The trial court held this statute affects substantive rights and therefore operates prospectively only.

■ As previously observed, this is a law action. Our appellate jurisdiction is confined to the correction of errors. Rule 344 (a)(3), Rules of Civil Procedure, requires a statement of errors relied on for reversal when the appeal presents questions of law rather than a statement of propositions relied on as required when the appeal is triable de novo. Associates Discount Corp. v. Held, 255 Iowa 680, 683, 123 N.W.2d 869, 871.

We treat what plaintiff has designated as proposition relied on for reversal as assignment of error. It is the court's ruling sustaining defendant's special appearance.

Defendant in his special appearance contends the court has not obtained jurisdiction because this section cannot be applied retroactively to contracts made and performed prior to its effective date, July 4, 1963.

Plaintiff contends the statute is purely procedural and remedial; that his cause of action arose subsequent to the effective date of this statute and therefore retroactive application is not necessary; one who registers under Iowa law to practice architecture within the state and proceeds to do so is subject to Iowa jurisdiction.

II. In plaintiff's first contention he asserts the statute neither enlarged nor impaired substantive rights or obligations; that it did nothing more than merely provide plaintiff with an Iowa forum to obtain redress for his already existing substantive rights.

The same contention was made in Krueger v. Rheem Manufacturing Co., 260 Iowa 678, 149 N.W.2d 142, argued before us the same term as this case. There the trial court also held section 617.3 operated prospectively only and sustained defendant's special appearance. We affirmed in an opinion filed March 7, 1967, rejecting appellants' contention. Ordinarily we would end our discussion of this contention with this statement, but the parties and counsel here have a right to know how the majority arrived at its conclusion. Therefore, we quote from the Krueger opinion:

"Whether a statute operates retrospectively or prospectively is a matter of legislative intent. Within constitutional limits, the legislature may by clear and express language state its intention. Manilla Community School District v. Halverson, 251 Iowa 496, [501], 101 N.W.2d 705, 708.

"* * *.

" 'As a rule all statutes are to be construed as prospective in operation unless the contrary is expressed or clearly implied. The rule is subject to an exception where the statute relates solely to remedies or procedure' [citing cases].

"Plaintiffs claim section 617.3 is solely procedural. Defendants argue it affects substantive rights. Both parties cite many authorities in support of their respective positions. In most instances, however, the apparent conflict is resolved when the type of service called for in the statutes is taken into consideration. Cases involving 'long arm' statutes which provide for service of notice on the defendant by personal service outside the state or by registered or certified mail have generally been held to be remedial only [citing cases].

"The decisions are based on the theory expressed in McGee v. International Life Ins. Co., supra [355 U. S. 220, 224, 78 S. Ct. 199, 201-202, 2 L. Ed.2d 223] loc. cit. 226, 227, in which the court said such statute was: 'remedial, in the purest sense of that term, and neither enlarged nor impaired respondent's substantive rights or obligations * * *. It did nothing more than to provide petitioner with a California forum to enforce whatever substantive rights she might have against respondent. At the same time respondent was given a reasonable time to appear and defend on the merits after being notified of the suit. Under such circumstances it had no vested right not to be sued in California.'

"In the same case the U. S. Supreme Court, page 225, pointed out that: 'In a continuing process of evolution this Court accepted and then abandoned "consent", "doing business", and "presence" as the standard for measuring the extent of state judicial power over' nonresident corporations before arriving at the 'minimum contacts' concept of due process annunciated in International Shoe Co. v. Washington, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A. L. R. 1057.

"However, some state legislatures have not abandoned the 'consent' concept in their 'long arm' statutes, but have provided that by doing certain acts in the state, the nonresident consents to a state official serving as his process agent and the statutes provide for substituted service on the designated official to obtain jurisdiction of nonresident defendants. Cases involving 'long arm' statutes which provide for substituted service have almost invariably held such statutes to affect substantive rights and to operate prospectively only [citing cases].

"* * *

"* * * [T]he fact that such statute [wholly procedural] could be enacted does not aid plaintiff here. '* * * the extent to which a state chooses to exercise jurisdiction over a foreign corporation [or a nonresident person] "is a matter for the law of the state as made by its legislature" * * *. Also, "It is a legislative, not judicial, function to extend or enlarge jurisdiction over foreign corporations [or a nonresident person]." ' [citing cases] : Hill v. Electronics Corp. of America, supra, [253 Iowa 581, 589, 113 N.W.2d 313] loc. cit. 318. See also Simonson v. International Bank, 14 N. Y.2d 281, 200 N.E.2d 427, 430.

"We must look to the statute which the legislature has seen fit to enact. It chose to adopt a substituted service statute. "* * *.

■ "For the reasons stated we hold section 617.3 operates prospectively only * * *." Thus construed, Chrischilles did not obtain jurisdiction of Griswold if required to rely solely on a contract theory.

However, plaintiff argues in support of his second contention that his cause of action did not arise until December 1964 when the damage due to negligent design first appeared, contending defendant's negligence, as stated in plaintiff's petition, gives rise to an action in tort rather than contract.

■ It appears to be well-settled in Iowa that where a contract imposes a duty upon a person, the neglect of that duty is a tort, and an action ex delicto will lie. "A tort may be dependent upon, or independent of, contract. If a contract imposes a legal duty upon a person the neglect of that duty is a tort founded on contract; so that an action ex contractu for the breach of the contract, or an action ex delicto for the breach of duty, may be brought at the option of the plaintiff." Matthys v. Donelson, 179 Iowa 1111, 1116, 160 N.W. 944, 946; Kunzman v. Cherokee Silo Co., 253 Iowa 885, 891, 114 N.W.2d 534, 537, 95 A. L. R.2d 673; Jordan v. Sinclair Refining Co., 257 Iowa 813, 820, 135 N.W.2d 120, 124; Iowa Power and Light Co. v. Abild Construction Co., 259 Iowa 314, 144 N.W.2d 303, 314.

The elements of a cause of action for negligence are set forth in Restatement, Second, Torts, section 281:

460

"The actor is liable for an invasion of an interest of another, if:

"(a) the interest invaded is protected against unintentional invasion, and

"(b) the conduct of the actor is negligent with respect to the other, or a class of persons within which he is included, and

"(c) the actor's conduct is a legal cause of the invasion, and

"(d) the other has not so conducted himself as to disable himself from bringing an action for such invasion."

██ As a registered practicing architect, defendant was bound to furnish design and specifications prepared with a reasonable degree of technical skill, and such as would produce, if followed and adhered to, a building of the kind called for, without marked defects in character, strength or appearance. Trunk & Gordon v. Clark, 163 Iowa 620, 624, 145 N.W. 277, 279.

██ Griswold performed the function of furnishing the design and specifications. It is plaintiff's claim defendant's work fell short of this standard and that he was damaged. Proper proof of these assertions would enable plaintiff to maintain an action in tort.

III. This presents the question, When did plaintiff's cause of action under the tort theory accrue?

As previously stated, the contract which gives rise to this lawsuit was executed March 3, 1959. Defendant's performance thereunder was completed in the fall of 1960 although plaintiff did not become aware of defendant's alleged negligent performance until December 1964. Plaintiff contends this is the date his cause of action arose and, being after the effective date of the statute, its retroactive application is not necessary.

Defendant contends the negligence causing the injury arose in 1960; plaintiff's house was then finished, it was then worse than it should have been and plaintiff was harmed to that extent. He argues it is the actual harm which completes the tort, not its degree or discovery, and to hold the trial court had jurisdiction of him would require retroactive application of the statute.

 In addition to the existence of the elements of a cause of action for negligence as enumerated in Restatement, Second, supra, there must be actual loss or damage to the interest of

another before a cause of action accrues. Generally, the wrong or negligence of the party charged gives in itself no right of action to anyone. An exception exists in those torts where irreparable injury is threatened. There a court of equity may act by injunction to prevent the harm before it occurs. Even here the damage, even though only potential, is the basis for granting relief. Prosser on Torts, Third Ed., section 30. There must be an injury as a consequence of the negligence to serve as a basis for recovery before the tort becomes actionable. Andersen v. National Presto Industries, Inc., 257 Iowa 911, 916, 135 N.W.2d 639, 641.

The general rule is that a cause of action accrues when the aggrieved party has a right to institute and maintain a suit.

Plaintiff alleged he did not become aware of defendant's negligent performance until December 1964. From this it is fair to assume that until then he was unaware of the injury to his interest or what caused it. This is the first he could have pursued an action to a successful result. This is not a case where defendant's negligence was known to plaintiff at the time of defendant's act, but the extent of the damage which ensued therefrom was not ascertained until months or years thereafter. Nor is fraudulent concealment involved.

It is true the injury is traceable to the original wrongful or negligent act, but until this act produced injury to plaintiff's interest by way of loss or damage, no cause of action accrued.

If an injured party is wholly unaware of the nature of his injury and the cause of it, it is difficult to see how he may be charged with a lack of diligence or sleeping on his rights.

We have said ignorance of a right does not prevent the running of the statute of limitations. Campbell v. Long, 20 Iowa 382, 387; Garrett v. Olford, 152 Iowa 265, 269, 132 N.W. 379, 381. Of course, the statute cannot commence to run until the cause of action accrues.

The trend since that time has been toward what may, for identification purpose, be designated the "discovery rule." This rule is not to be confused with the completely distinct concept of fraudulent concealment which is the subject of an express statute. Section 614.4. It has been said "simply and clearly stated

the discovery rule is: The limitation statute or statutes in malpractice cases do not start to run until the date of discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act." Johnson v. Caldwell, 371 Mich. 368, 379, 123 N.W.2d 785, 791.

This rule has been approved in many jurisdictions in malpractice cases. For a collection of cases see annotation 80 A. L. R.2d 368, 388, also Later Case Service, Volume 6, pages 406, 407.

In addition it has been applied in Ginkowski v. Ginkowski, 28 Wis.2d 530, 137 N.W.2d 403, 406 (an annulment case); Polzin v. National Co-op. Refinery Assn., 175 Kan. 531, 266 P.2d 293, 297 (action to recover damages for pollution of water well of landowner; damage to his well did not become apparent until September 20, 1948; act of defendant occurring in 1947; action filed 1950); Rothman v. Silber, 83 N. J. Super. 192, 199 A.2d 86, 92 (a saddle block anesthesia); Johnson v. Caldwell, 371 Mich. 368, 123 N.W.2d 785, 791 (loss of consortium); Ricciuti v. Voltarc Tubes, Inc. (CA 2, Conn.), 277 F.2d 809, 812, 813 (suit for damages resulting from disability caused by berylliosis, a disease of the lungs, alleged to have been caused by handling neon tubes; disability commenced in 1953 but plaintiff's symptoms were not diagnosed as berylliosis until January 27, 1956, with suit being brought December 2, 1957); Urie v. Thompson, 337 U. S. 163, 169, 170, 69 S. Ct. 1018, 1024, 93 L. Ed. 1282, 1292 (suit under Federal Employers' Liability Act); Dryden v. Omaha Steel Works, 148 Neb. 1, 26 N.W.2d 293, 295 (workmen's compensation case); Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 68 A.2d 517, 535 (death claim resulting from gas tank explosion, the tank having been erected in September 1943, the death occurring October 20, 1944, and action filed within one year following date of death).

The question in any given case is not, What did plaintiff know of the injury done him? but, What might he have known, by the use of the means of information within his reach, with the vigilance which the law requires of him? Scranton Gas & Water Co. v. Lackawanna Iron & Coal Co., 167 Pa. 136, 152, 31 A. 484, 485.

■ We now believe the better rule to be that a cause of action based on negligence does not accrue until plaintiff has in fact discovered that he has suffered injury or by the exercise of reasonable diligence should have discovered it and are persuaded the rationale of the discovery doctrine should be adopted.

■ We conclude that plaintiff's cause of action did not accrue until he discovered or in the exercise of reasonable diligence should have discovered the injury to his interest and his contention that the cause of action accrued in December 1964 is correct.

IV. Based on our holding in Krueger v. Rheem Manufacturing Co., supra, construing section 617.3 to operate prospectively only and classifying this section as a consent statute, plaintiff is not aided by the fact his action accrued subsequent to enactment of this section. Here all affirmative acts of negligence on defendant's part occurred in the fall of 1960. Defendant cannot be deemed to have consented to the appointment of the secretary of state to be his true and lawful attorney upon whom may be served an original notice by an act done prior to enactment of the statute. To hold the trial court had jurisdiction of defendant in this case would require retroactive application. Plaintiff's second contention cannot be sustained.

■ V. We have considered plaintiff's third contention that by being registered to practice in Iowa defendant was subject to its jurisdiction and we find it to be without merit.

The action of the trial court in sustaining defendant's special appearance is—Affirmed.

GARFIELD, C. J., and LARSON and SNELL, JJ., concur.

MOORE, J., concurs in result.

STUART, J., concurs except that he dissents from Division IV.

RAWLINGS and BECKER, JJ., dissent.

THORNTON, J., not sitting.

STUART, J.—I am unable to agree our decision in Krueger v. Rheem Manufacturing Co., 260 Iowa 678, 149 N.W.2d 142, compels the result reached by the majority in Division IV of the

opinion. In the Krueger case we examined the authorities and found that almost invariably long-arm statutes providing for substituted service have been held to apply prospectively only. The Iowa legislature chose to adopt such a statute. It was very similar to one which we had held to be prospective only. Davis v. Jones, 247 Iowa 1031, 78 N.W.2d 6. We, therefore, concluded the legislative intent must have been for prospective application.

As we pointed out in Krueger, the substituted service cases are based upon the fiction of implied consent. The statutes provide that a party, by doing something specified in the statute, is deemed to have consented that a designated official shall act as his process agent. It logically follows that consent could not be implied if the statute making consent a consequence of such act was not in effect when the act occurred.

In the statute in question the legislature has made the committing of a tort in whole or in part the act or event from which consent to substituted service may be implied. In Andersen v. National Presto Industries, Inc., 257 Iowa 911, 135 N.W.2d 639, we held the resulting injury to be a part of the tort conferring jurisdiction on the Iowa courts where the negligent acts occurred outside the state but the injury occurred in Iowa. Therefore, as we have held here the injury did not occur until after the effective date of the statute, and as the injury has been held to be part of a tort and as the statute makes the committing of a tort in whole or in part the act or event from which consent is implied, we have no question of retroactive application.

The majority by requiring that consent can only be implied from negligent acts is ignoring the wording of the statute as it was interpreted in the Presto case. Implied consent is a fiction. The legislature could base the fiction on the commission of the tort as well as the doing of negligent acts. The majority by looking for some conduct on defendant's part upon which to base the implied consent is making the consent more akin to one implied in fact than one raised in law by statutory enactment. This would have been necessary when the United States Supreme Court held the fiction of implied consent was necessary to confer jurisdiction. This is no longer the case. McGee v. International Life Ins. Co., 355 U. S. 220, 224, 78 S. Ct. 199, 201, 202,

2 L. Ed.2d 223. I believe the majority opinion gives more substance to the implied consent theory than it is entitled to.

I would reverse.