**Jeanne WOODROFFE, Appellant,**

v.

**Everett HASENCLEVER, Appellee.**

No. 94–698.

Supreme Court of Iowa.

Nov. 22, 1995.

David A. Hirsch and Peggy N. Ell of Beckman, Hirsch & Ell, Burlington, for appellant.

Douglas H. Napier of Napier, Wright & Wolf, Fort Madison, for appellee.

SNELL, Justice.

This case involves an interpretation of Iowa Code section 614.8A (1991), damages for child sexual abuse—time limitation. Plaintiff filed claims for sexual abuse, assault, and intentional infliction of emotional distress. Defendant filed a motion to dismiss all claims; the trial court dismissed the claims for assault and intentional infliction of emotional distress. On order by the trial court, the plaintiff then recast her petition as to the claim of sexual abuse. A summary judgment motion was then filed by defendant and granted by the trial court on the claim of sexual abuse. Plaintiff appeals from these adverse orders and judgment. We affirm.

I. Factual Background

On November 13, 1992 plaintiff, Jeanne Woodroffe, commenced this action against defendant, Everett Hasenclever, claiming damages for sexual abuse, assault, and intentional infliction of emotional distress. Woodroffe states the acts complained of commenced when she was one and one-half years old and continued until she was approximately thirteen. She remembered one specific act of sexual abuse as occurring when she was five years old. She names Hasenclever, her uncle, as the perpetrator. At the time of filing her petition, plaintiff was over forty years old, having been born on September 27, 1952.

After seeing a television program on child sexual abuse, Woodroffe consulted psychologist Dr. Michael Hall on March 20, 1985. Hall's notes from this interview state that his patient "is a product of a lot of child-sexual abuse at the age of five by her uncle." Though not named in this note, Woodroffe agrees that this reference is to Hasenclever. At a later interview with Hall, on October 4, 1989, she describes in detail recollections of oral sex forced on her by Hasenclever.

Woodroffe explains that the long delay between her reaching the age of majority and the filing of this suit is the result of her being the victim of "repressed memory syndrome" or "post-traumatic stress syndrome." She cites Iowa Code section 614.8A entitled "Damages for child sexual abuse—time limitation" as providing extra time for asserting claims such as hers. She argues the statute is retroactive and, if not, the common law discovery rule applies to protect her claim from dismissal under a statute of limitations.

II. Retroactivity of Statute

The summary judgment motion brings to the fore the validity of these arguments. In assessing whether summary judgment is proper, the trial court looks to the pleadings, depositions, answers to interrogatories, and admissions to see if there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Hegg v. Hawkeye Tri–County REC,* 512 N.W.2d 558, 559 (Iowa 1994). The trial court here examined these documents in making its decision to grant the summary judgment.

Iowa Code section 614.8A provides as follows:

An action for damages for injury suffered as a result of sexual abuse which occurred when the injured person was a child, but not discovered until after the injured person is of the age of majority, shall be brought within four years from the time of discovery by the injured party of both the injury and the causal relationship between the injury and the sexual abuse.

The legislature also provided that "this Act is applicable to all actions filed on or after the effective date of the Act." 1990 Iowa Acts ch. 1241, § 3. The Act became effective on July 1, 1990 as provided by Iowa Code section 3.7(1).

The trial court decided that Iowa Code section 614.8A is not retroactive to revive previously barred claims. We have addressed this issue in *Frideres v. Schiltz,* 540 N.W.2d 261, 264 (Iowa 1995), in which we interpreted this statute to be not retroactive to revive claims barred by a statute of limitations in existence prior to July 1, 1990, the effective date of section 614.8A.

## III. Discovery Rule

■ The trial court next determined whether the common law discovery rule applies to Woodroffe's case. Under that rule the applicable period of limitations does not begin to run "until the plaintiff discovered that he had suffered injury or by the exercise of reasonable diligence should have discovered it." *Chrischilles v. Griswold*, 260 Iowa 453, 461–62, 150 N.W.2d 94, 99–100 (1967). In *Callahan v. State*, 464 N.W.2d 268, 272 (Iowa 1990), we phrased the rule that a claim does not accrue until the plaintiff knows or in the exercise of reasonable care should have known both the fact of the injury and its cause. We also held in *Frideres* that the statutory discovery rule of section 614.8A applied to claims filed after July 1, 1990 and the common law rule of discovery applied to claims filed before July 1, 1990, provided the claim had not been previously barred by an applicable statute of limitations. *Frideres*, 540 N.W.2d at 264.

■ The trial court considered the common law discovery rule but found it to be of no aid to Woodroffe's lawsuit. The court found that Dr. Hall's notes and deposition make it inescapable that as early as March 20, 1985 Woodroffe sought professional help for specific psychological symptoms and related to him specific recollections of "child sexual abuse by her uncle." Dr. Hall's note for March 20, 1985, goes on to state that the plaintiff

> has suppressed most of her reactions until seeing a T.V. program several months ago on child sexual abuse. Cries when talking about it and is frustrated with herself for having such a strong emotional reaction. Realizes that she has to face some of these painful experiences if she is going to get over her feelings towards her brother and her uncle. Has had abusive and self-destructive relationships with men over a period of many years.

The trial court concluded that this information could only have come from the plaintiff because this was her first appointment and any entries had to be entirely based upon statements made by the plaintiff. The court found that reasonable minds could not differ that plaintiff remembered the abuse and was aware enough of its effect to seek professional help from a psychologist and cite it as a cause. The court then determined that the requisite "causal relationship" under section 614.8A existed and the limitations period began to run.

We too conclude from these statements that both the sexual abuse and its relationship to her psychological problems were known to Woodroffe at the time of her consultation with Dr. Hall. The two-year period of limitations for bringing an action founded on injuries to the person, as set by Iowa Code section 614.1(2), thus barred Woodroffe's claim on March 20, 1987. In *Frideres*, we held that Iowa Code section 614.8A is not retroactive to revive barred claims.

## IV. Extent of Discovery Rule Application

Woodroffe discounts the importance of her 1985 interview with Dr. Hall, arguing that she was then only vaguely aware of the sexual abuse. On October 1, 1989, she says she recalled a separate incident when she claims the defendant forced her to have oral sex. Woodroffe states that she first recalled and discovered, on or about March 16, 1990, one of the rape incidents perpetrated on her by defendant. She further cites in her affidavit of resistance to defendant's summary judgment motion, examples, including dates, when her memory surfaced of the specifics of her uncle's sexual abuse. These dates are March 20, 1985; November 14, 1988; August 17, 1989; August 31, 1989; October 1, 1989; November 29, 1989; June 20, 1990; July 2, 1990; and February 26, 1991.

Woodroffe further states

> I became able to relate some of the causal relationships between a specific psychological problem and the childhood sexual abuse by my uncle on the following dates: December 28, 1989; February 14, 1990; March 19, 1990; May 14, 1990; March 5, 1991; July 15, 1991; July 22, 1991; August 8, 1991; August 12, 1991; September 5, 1991; October 17, 1991; January 20, 1992; February 6, 1992; March 5, 1992; March 9, 1992; March 19, 1992; April 20, 1992; June 6, 1992; June 8, 1992; July 9, 1992.

All of these dates are within four years of November 13, 1992, the date Woodroffe commenced this action. Plaintiff thus argues that none of her newly discovered sexual abuse claims are barred by any statute of limitations, because she filed her action after July 1, 1990, when section 614.8A went into effect and within four years of discovery.

Defendant Hasenclever characterizes this continuation of newly remembered abuses as arguing in favor of a "rolling statute of limitations." The trial court thought to adopt plaintiff's argument would create a "moving window" of limitations. The trial court noted that each time a plaintiff recalls something new, the "clock" would be reset and the plaintiff would have additional time to bring another lawsuit. Thus, each newly remembered incident of an alleged sexual abuse would constitute another offense remembered subject to a separate calculation to determine if a statute of limitation had barred it as a civil claim for damages. The running of the statute of limitations would depend neither on when the offense occurred, as in most tort cases, nor on when the plaintiff knew or in the exercise of reasonable care should have known both the fact of the injury and its cause, as in our discovery rule cases. *See Callahan,* 464 N.W.2d at 272. The statute of limitations would run on even newly remembered incidents of sexual abuse, such as plaintiff's, from when a plaintiff discovers the injuries for which she claims damages.

Plaintiff Woodroffe states that when she met with Dr. Hall in 1985, she had not yet recalled all of the incidents of abuse. She asserts that the worst incidents were not recalled until very recently and that she continues to recall new incidents. She argues the limitations period should not begin to run until she has recalled all of the abuse or, at the very least, that she should be permitted to bring an action based on incidents that have only recently been recalled within the limitations period.

The trial court rejected this argument in its entirety projecting that to adopt such a theory would render statutes of limitations meaningless. The court reasoned that when a plaintiff recalls an incident of sexual abuse

and recognizes a causal relationship between the abuse and the injuries suffered, she is then on notice to make reasonable inquiry of other abuses or injuries.

▇ Plaintiff further argued before the trial court that by requiring her to file suit upon her earliest recollection, she will be deprived of full and adequate compensation for her injuries due to the fact that the extent of her injuries will not yet be known. The trial court answered that in many personal injury cases the statute of limitations period begins to run before the full specifics of negligence and the full depth of injuries are known. Plaintiffs are nonetheless required to bring suit within the limitations period and the problem of acquiring greater knowledge is dealt with through procedural mechanisms including protracted continuation of trial. In *Fitzgerald v. Seamans,* 553 F.2d 220, 227 (D.C.Cir.1977), the court applied this doctrine when the plaintiff had not suffered all of the injury to which he would ultimately fall prey, stating "the fact of injury was sufficiently plain for plaintiff's cause of action to accrue even though the extent and precise nature of the injury had not yet developed."

▇ Our court has embraced the concept of inquiry notice in several cases spanning a number of years. In *Estate of Montag v. T.H. Agriculture & Nutrition Co.,* 509 N.W.2d 469, 470 (Iowa 1993), we approved of this doctrine:

> Under our cases the statute of limitations begins to run when a plaintiff first becomes aware of facts that would prompt a reasonably prudent person to begin seeking information as to the problem and its cause. In that case, "the period of limitations is the outer time limit for making the investigation and bringing the action. The period begins at the time the person is on inquiry notice."

*Id.* (quoting *Franzen v. Deere & Co.,* 377 N.W.2d 660, 662 (Iowa 1985)).

> In the *Franzen* case, we said the following: Moreover, the duty to investigate does not depend on exact knowledge of the nature of the problem that caused the injury. It is sufficient that the person be aware that

a problem existed. One purpose of inquiry is to ascertain its exact nature.

. . . .

Plaintiffs knew the instrumentality that caused the injury at the time it occurred. They knew the injury was caused when Eligius became entangled in the beaters of the forage wagon. The information they possessed on the date of the accident was plainly sufficient to put them on inquiry notice concerning possible defects in the wagon. They did not investigate at that time. When they later investigated, they found the alleged defects they now rely on. They are not aided by the fact they postponed their investigation until their discussion with a lawyer in January 1981. The lawyer's suggestion that they might have an actionable claim did not diminish their prior duty to investigate the facts when they were on inquiry notice.

*Franzen,* 377 N.W.2d at 662–63. *See also Nachazel v. Mira Co. Mfg.,* 466 N.W.2d 248, 252–53 (Iowa 1991) (plaintiffs and their attorneys possessed imputed knowledge that Mira's assets were held by Ahrens Company, this knowledge being sufficient to place plaintiffs on inquiry notice).

We considered the breadth of application of the discovery rule in *Sparks v. Metalcraft, Inc.,* 408 N.W.2d 347, 350–52 (Iowa 1987). Quoting with approval from *Chrischilles v. Griswold,* we said the relevant question is this:

> The question in any given case is not, What did plaintiff know of the injury done him? but, What might he have known, by the use of the means of information within his reach, with the vigilance which the law requires of him?

*Sparks,* 408 N.W.2d at 351 (quoting *Chrischilles v. Griswold,* 260 Iowa 453, 462, 150 N.W.2d 94, 100 (1967)).

In *Sparks* we explained the rule as follows:

> .The statute begins to run when the person gains knowledge sufficient to put him on inquiry. On that date, he is charged with knowledge of facts that would have been disclosed by a reasonably diligent investigation. Moreover, once a person is aware a problem exists, he has a duty to investi-

gate even though he may not have exact knowledge of the nature of the problem that caused the injury.

*Sparks,* 408 N.W.2d at 351 (citations omitted).

The question in *Sparks* was whether the statute of limitations bar of plaintiff's action based on negligence and strict liability also barred a later claim based on fraud. *Id.* at 350. In holding that all of plaintiff's causes of action were barred we said, "The district court did not err in concluding as a matter of law that the statute of limitations barred all of the remaining causes of action pleaded by the Sparkses." *Id.* at 352–53.

The purpose of the discovery rule as applied to the statute of limitations was discussed in *LeBeau v. Dimig,* 446 N.W.2d 800, 802–03 (Iowa 1989). In *LeBeau,* we applied the statute as a bar against a plaintiff who "discovered" new injuries after the statute had run. We said:

> While fairness to a plaintiff provides justification for the discovery rule, we believe fairness to a defendant must temper the application of the rule. The reasonable expectations of a defendant as to when exposure to liability will be terminated, which lie at the heart of the statute of limitations, would be seriously eroded if we were to adopt *[* LeBeau's*]* theory. The practical problems already discussed further militate against it.

*Id. See generally* Russell G. Donaldson, *Application of Discovery Rule to Postpone Running of Statute of Limitations Against Action for Damages From Assault,* 88 A.L.R.4th 1063 (1991).

Although these cases do not address the situation presented in the instant case where the plaintiff is asserting multiple causes of action against a defendant based on memory surfacing sporadically after many years, we believe the principle of inquiry notice applied in the above cases is appropriate to apply here. The trial court was correct in so doing. We therefore hold all of Woodroffe's claims asserted against defendant as having occurred before her age of majority are barred by the statute of limitations.

**50**

### V. Conclusion

The trial court correctly applied our rule of civil procedure on summary judgment to this case. Iowa Code section 614.8A does not apply to this case and is not retroactive to revitalize claims of sexual abuse barred under the provisions of Iowa Code section 614.1(2), nor does our common law discovery rule protect Woodroffe's claim of sexual abuse from dismissal under Iowa Code section 614.1(2).

In *Frideres v. Schiltz*, 540 N.W.2d 261, 268 (Iowa 1995), we decided claims of assault and intentional infliction of emotional distress arising out of sexual abuse are included in the provision of Iowa Code section 614.8A. However, these claims are not revived by section 614.8A if previously barred by an applicable statute of limitations. Because Woodroffe's claims of assault and intentional infliction of emotional distress arose out of her claim of sexual abuse which is barred by the statute of limitations, they are also barred. The trial court's dismissal of these two additional claims had the correct legal effect and is therefore affirmed.

**AFFIRMED.**