Jeffrey **STEINKE,** Plaintiff–Appellant/Cross–Appellee,

v.

John F. **KURZAK,** John P. Perdue, Defendants–Appellees/Cross–Appellants,

and

**The Diocese of Sioux City, Iowa,** Defendant–Appellee.

No. 10–1251.

Court of Appeals of Iowa.

July 13, 2011.

R. Scott Rhinehart of Rhinehart Law, P.C., Sioux City, and Patrick J. Hopkins of Hopkins Law Office, P.L.C., for appellant.

James W. Redmond and Rosalynd J. Koob of Heidman Law Firm, L.L.P., Sioux City, for appellee Kurzak.

Paul W. Deck, Jr. of Deck & Deck, L.L.P., Sioux City, for appellee Perdue.

Michael W. Ellwanger of Rawlings, Nieland, Killinger, Ellwanger, Jacobs, Mohrhauser & Nelson, L.L.P., for appellee diocese.

Considered by EISENHAUER, P.J., and POTTERFIELD and TABOR, JJ.

TABOR, J.

Jeffrey Steinke challenges the district court's grant of summary judgment to the Diocese of Sioux City in his lawsuit alleging he was sexually abused by John Kurzak, a Roman Catholic priest, and John Perdue, a former priest. Kurzak and Perdue cross-appeal from the district court's denial of summary judgment on their claim that Steinke's suit is barred by the two-year statute of limitations at Iowa Code section 614.1(2) (2009).

Steinke commenced his action in 2008 based upon incidents of sexual abuse that allegedly occurred in 1981 and 1982. The district court applied the discovery rule and determined that "when Steinke knew or should have known about his abuse" was a question "best left for the finder of fact." Given Iowa's existing case law, we must conclude the discovery rule did not toll the statute of limitations because Steinke knew the acts of Kurzak and Perdue were abusive and caused him harm at the time they were committed.[1] Because we reverse based on the statute of limitations, we do not address the district court's other grounds for granting summary judgment for the Diocese.

## I. Background Facts and Proceedings

For purposes of determining when Steinke's cause of action accrued, we outline the evidence presented in his petition, his responses to interrogatories, his depo-

---

1. We reach the same conclusion in the appeal involving another plaintiff who filed his cause of action during a similar time frame against the same three defendants. *Kestel v. Kurzak,* —— N.W.2d —— (Iowa App.2011) filed this date.

sition, and other filings in opposition to the defendants' summary judgment motions.

Steinke was born in Milwaukee in November 1963. His mother was a devout Roman Catholic, who raised him with a deep commitment to his faith. His family moved to Fort Dodge after he completed sixth grade. They joined Sacred Heart Parish and he attended the junior high connected with that church. His family then transferred to the Corpus Christi Parish and Steinke enrolled in St. Edmond High School. He graduated from St. Edmond in 1982. Steinke was active in church-sponsored activities throughout his youth and harbored an interest in becoming a priest.

From 1979 to 1981, Father John Kurzak served as the assistant pastor at Corpus Christi Parish in Fort Dodge. During the same time period, the Diocese of Sioux City placed Kurzak on the faculty at St. Edmond High School. Father Kurzak developed a relationship with Steinke, taking the teenager golfing and to other sporting events, as well as visits to the Fort Dodge police department, where Kurzak was chaplain.

During the summer of 1981, the Diocese assigned Kurzak to Our Lady of Good Counsel Parish in Moorland, which was about seven miles southwest of Fort Dodge. At that time, Kurzak introduced Steinke to John Perdue, who was then a seminary student. Steinke recalled Kurzak and Perdue inviting him and other high school boys to the Moorland rectory for "get-togethers" that involved playing cards, eating pizza, and consuming alcohol, despite the fact the boys were under the legal drinking age. When the boys became intoxicated, Kurzak and Perdue would insist they stay overnight at the rectory to avoid being arrested for drunken driving. According to Steinke, Kurzak and Perdue then would introduce porno-

graphic videos and magazines and used a Polaroid camera to take inappropriate photographs of the boys in attendance. Steinke alleged that Perdue photographed him when he was urinating and when he was exiting the shower. He also alleged that Kurzak and Perdue were "grabbing our genitals and buttocks and giving overly affectionate embraces and hugs." Steinke wrote in response to interrogatories: "During the night, we were bothered by their grabbing and taking pictures."

Steinke recalled that later in the summer Kurzak and Perdue took him on a trip to the Okoboji–Spirit Lake area. At the double-wide trailer where they stayed, the older men provided seventeen-year-old Steinke with mixed drinks, specifically Brandy Manhattans. While he was under the influence of alcohol, the men convinced Steinke to disrobe and go skinny dipping in the lake. Steinke wrote in response to his interrogatory: "The next thing that I remember is being very terrified in the trailer's bathroom, sitting on the commode and bleeding from the rectum." He recalled later taking a rowboat out onto the lake in the middle of the night to get away, but eventually returned because Kurzak and Perdue were his only means of getting home.

Steinke alleged a third incident of abuse occurred late that summer at a going away party for Kurzak, who left his duties as a diocesan priest in Fort Dodge to serve as a military chaplain in the fall of 1981. During a "sexually charged" gathering at a cabin on North Twin Lake, Iowa, Kurzak and Perdue grabbed Steinke's genitals.

During the summer of 1982, Perdue took Steinke to a Minnesota Twins game and during an overnight at a rectory in Sioux City, Steinke awoke to Perdue fondling his genitals. Steinke wrote in response to interrogatories that after the trip to Sioux City he was reluctant to be alone with

Perdue. Nevertheless, later that summer Perdue convinced Steinke to attend another gathering at Twin Lakes. Steinke described the scene as follows:

Again, things started with obscene jokes and stories, sexual conversations, and derogatory comments about women and girls. After we had consumed a sufficient amount of alcohol to lower inhibitions, pornography was produced. The same pattern of grabbing genitals and buttocks and overly affectionate embraces and hugs started once the environment became sexually charged. Perdue once again produced his ever present Polaroid and began taking pictures of the activities.

Steinke recalled one final encounter with Perdue at the trailer on Little Spirit Lake. Steinke hesitated to go given the prior incidents; he relented based on his belief he needed to be sociable to be considered for the priesthood. Perdue hosted Steinke and two other teenage boys, but Perdue's promise of swimming and boating did not come to fruition. When the trip turned into time spent drinking alcoholic beverages in the trailer, Steinke left with one of his friends to stay overnight with an acquaintance in Spencer. Steinke's decision angered Perdue, who threatened to ruin Steinke's future by revealing his sexual activities to his parents, as well as school and church officials. Perdue reminded Steinke that he had photographs documenting the teen's participation. Steinke wrote in response to an interrogatory: "So I kept my mouth closed and never told anyone, praying that the trauma would go away."

Steinke told a psychologist that he was a good student and happy person before the abuse. His family noticed his changed behavior when he was in high school; his older sister asked his mother: "What happened to him?" Steinke testified to having anxiety, depression, and panic attacks since he was a senior in high school. He also testified that since his senior year in high school he has experienced recurring nightmares in which he was struggling to get away from Kurzak and Perdue.

In an interrogatory response he stated: Over the years I have used various methods to cope with this trauma, most of them negative and emerging as obsessive compulsive behaviors. It's like a big hole that I try to fill with intense experiences that never gets filled, it only gets bigger. These intense experiences help you forget the pain, even if for a very brief time.

Steinke attended Iowa State University and earned a bachelor's degree in business administration. He also obtained a master's degree in business administration from Marquette University. He told psychologist Dan Rogers that he "continued to be fearful and 'disgusted' by the events but he tried to shut it out of his mind." Even in college he had "vivid recollections of the events, often intruding into his thoughts and study." Steinke was married twice and has two children with his second wife. He has worked as a hospital administrator and most recently as an assistant vice president for a national campground business, earning about $75,000 annually.

Steinke started mental health treatment in 1995. In September 2007, he experienced what he described as a "triggering event" when a man in his wife's office was arrested; this event prompted him to contact an attorney about the abuse. It was then Steinke began seeing a therapist for posttraumatic stress disorder (PTSD) that he believed was related to the sexual abuse he allegedly suffered in 1981 and 1982. In May 2008, Dr. Rogers evaluated Steinke, concluding: "Only recently, within the last 1–2 years, has he been able to appreciate the recollection of the sexual abuse, which

was effectively excluded from active memory and appreciation since he was a child."

On March 20, 2008, Steinke filed a petition at law against defendants Kurzak, Perdue, and the Diocese. The petition alleged eight counts: (I) Perdue and Kurzak sexually abused Steinke causing him pain and mental anguish, and the Diocese conspired in the sexual abuse, (II) the Diocese was liable for the sexual abuse committed by Perdue and Kurzak based on the doctrine of respondeat superior, (III) the Diocese engaged in negligent supervision of Perdue and Kurzak, (IV) Diocesan officials intentionally prevented assistance to Steinke, (V) the Diocese intentionally inflicted emotional distress, (VI) intentional infliction of emotional distress by Kurzak, (VII) intentional infliction of emotional distress by Perdue, and (VIII) fraud. All three defendants filed answers denying the claims and asserting affirmative defenses, including the contention that the action was barred by the statute of limitations. The defendants also filed motions for summary judgment, alleging no genuine issue of material fact existed and reiterating the argument that the action was filed outside the two-year statute of limitations at Iowa Code section 614.1(2).

The district court sustained the Diocese's motion for summary judgment on the issue of liability. The district court overruled the motions for summary judgment filed by Kurzak and Perdue, finding an issue of material fact existed concerning the timeliness of Steinke's cause of action under the common law discovery rule.

Steinke appeals from the grant of summary judgment for the Diocese. Kurzak and Perdue cross appeal the denial of their motions regarding the statute of limitations.[2] As appellant, Steinke filed a reply brief concerning the Diocese's liability, but did not—as cross-appellee—respond to the arguments of Perdue and Kurzak concerning the statute of limitations.

## II. Scope and Standard of Review

We review a summary judgment ruling for correction of legal error. *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 447 (Iowa 2008). Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits reveal no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Hegg v. Hawkeye Tri–County REC*, 512 N.W.2d 558, 559 (Iowa 1994). On appeal of a summary judgment ruling, we must decide whether a genuine issue of material fact exists, and if the district court correctly applied the law. *Id.* The evidence presented must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Murtha v. Cahalan*, 745 N.W.2d 711, 713–14 (Iowa 2008). "On appeal we 'indulge in every legitimate inference that the evidence will bear in an effort to ascertain the existence of a fact question.'" *Id.* (citation omitted).

Summary judgment is appropriate when a claim is barred by the applicable statute of limitations. *Stahl v. Preston Mut. Ins. Ass'n*, 517 N.W.2d 201, 202 (Iowa 1994).

---

2. In the district court, Steinke advanced the alternative argument that Iowa Code section 614.8(1) extended the time for him to file his lawsuit. The district court concluded that section 614.8(1) did not toll the statute of limitations because the record did not support the claim that Steinke's mental disability rendered him unable to understand his rights or timely file his suit. On appeal, Steinke does not argue the district court erred in that conclusion. Because the alternative basis is not being urged on appeal, we decline to address it. *See Feld v. Borkowski*, 790 N.W.2d 72, 78 (Iowa 2010) ("Our obligation on appeal is to decide the case within the framework of the issues raised by the parties.").

### III. Analysis

#### A. Statute of Limitations and Common Law Discovery Rule

 In Iowa, a two-year statute of limitations governs most tort claims. Iowa Code § 614.1(2). "While the legislature prescribes the period of limitation, courts have generally been called upon to determine when a claim accrues to start the running of the statute of limitations." *Rathje*, 745 N.W.2d at 448. "This task has been formidable, largely due to the manifold sequences in which the elements of a tort action can unfold and become discernible to a plaintiff as a signal to pursue a legal remedy for a wrong." *Id.*

More than forty years ago, our supreme court established that the statutory limitations period does not start to run "until [the] plaintiff has in fact discovered that he has suffered injury or by the exercise of reasonable diligence should have discovered it." *Chrischilles v. Griswold*, 260 Iowa 453, 463, 150 N.W.2d 94, 100 (1967) (superseded by statute). In further articulating its discovery rule, our supreme court held in a child sexual-abuse case that a claim "does not accrue until the plaintiff knows or in the exercise of reasonable care should have known both the fact of the injury and its cause." *Callahan v. State*, 464 N.W.2d 268, 273 (Iowa 1990).

In *Callahan*, the mother furnished affidavits from experts who discussed the phenomenon of memory repression by child sex abuse victims, stating that the mother's delayed discovery of her child's injury was understandable under the circumstances. *Id.* The court recognized this "repression syndrome, together with other considerations of fairness," have prompted courts to apply the discovery rule liberally in child sex-abuse cases. *Id.* at 272. The court concluded such evidence generated a genuine issue of material fact concerning the application of the discovery rule and precluded the entry of summary judgment. *Id.*

Our supreme court has also embraced the concept of "inquiry notice" as a means to determine the outer time limit for bringing a cause of action. *Woodroffe v. Hasenclever*, 540 N.W.2d 45, 48 (Iowa 1995). The court defined inquiry notice as being " 'aware of facts that would prompt a reasonably prudent person to begin seeking information as to the problem and its cause.' " *Id.* (citation omitted). That moment of awareness begins the running of the statute of limitations. *Id.* The court pointed out

> the duty to investigate does not depend on exact knowledge of the nature of the problem that caused the injury. It is sufficient that the person be aware that a problem existed.[3] One purpose of inquiry is to ascertain its exact nature.

*Id.* at 48–49 (citation omitted).

In *Woodroffe*, the court determined the plaintiff was on inquiry notice when she first consulted with a psychologist after seeing a television show about child sexual abuse that sparked a memory of her own childhood trauma because at that time she "remembered the abuse and was aware enough of its effect to seek professional help." 540 N.W.2d at 47. During her initial therapy session the plaintiff had related specific recollections of abuse perpetrated by her uncle and told the therapist she realized she would have "to face some of these painful experiences" if she was going to "get over" her feelings toward her uncle. *Id.*

---

3. When opining that a plaintiff only needs to be aware that a problem exists to start the statute running, the court intended the term "problem" to encompass both the injury and its cause in fact. *See Rathje*, 745 N.W.2d at 460.

In *Borchard v. Anderson*, 542 N.W.2d 247, 250 (Iowa 1996), the supreme court distinguished its earlier decision in *Callahan*, 464 N.W.2d at 271–72, which "recognized that psychologically repressed memories may sometimes serve to toll the statute of limitations." Plaintiff Borchard sued her ex-husband for an intentional tort, alleging that he repeatedly abused her during their marriage. *Borchard*, 542 N.W.2d at 249. To explain the belated timing of her suit, she invoked the discovery rule, contending she did not understand the connection between the domestic violence and her emotional difficulties until she was diagnosed with PTSD. *Id.* The supreme court found that Borchard, in contrast to the child sexual abuse victim in *Callahan*, could "make no cognizable claim that she repressed all memories of domestic abuse." *Id.* at 250. The *Borchard* court held the plaintiff's situation did not trigger the discovery rule because

> [s]he was aware the domestic abuse inflicted by [her husband] was inappropriate and that it caused her harm. She may not have known medically why and how this abuse had and still does affect her. The law however does not require such knowledge; the law requires only that she be aware of the existence of a problem.

*Id.* at 251.

The Eighth Circuit Court of Appeals relied on the Iowa cases of *Woodroffe* and *Borchard* in determining that a women's belated claims of sexual assault were time barred as a matter of law. *Frideres v. Schiltz*, 113 F.3d 897, 899 (8th Cir.1997). Frideres alleged that her brother and fa-

ther sexually assaulted her between the ages of five and fourteen, but that she did not become aware the abuse she suffered as a child caused the suicidal tendencies and depression she experienced as an adult until she began counseling with a clinical psychologist, twenty-three years later. *Frideres*, 113 F.3d at 898. The circuit court acknowledged that a plaintiff's "mere knowledge of abuse" will not necessarily trigger the statute of limitations in every case. *Id.* at 899.[4]

But the Eighth Circuit determined that Frideres had enough knowledge linking her abuse and injuries to put her on inquiry notice more than two years before filing suit. *Id.* For instance, nine years before she filed suit, she sought help from her family physician for depression, and three years before filing, her priest recommended that she seek professional help for the difficulties she was experiencing as a result of the abuse. *Id.* The Eighth Circuit determined, as a matter of law, that Frideres's action was barred by Iowa's two-year statute of limitations because she "remembered the abuse and was aware of enough of its effects to seek help more than two years prior to the commencement of her action." *Id.*

## B. Application of Discovery Rule

In this case, the district court summarized Steinke's position that his cause of action did not accrue until 2007 as follows:

> He argues that he did not make a connection between the abuse he suffered and the injury that occurred until making a breakthrough that connected his current injuries with the harm that oc-

---

4. In answering a certified question from the federal district court in this case, the Iowa Supreme Court explained, "a person who has always remembered some specific act or acts of sexual abuse may rely on the discovery rule in those instances where the nexus between those specific acts and the claimed injuries is not discovered until a time less than two years prior to commencement of the action." *Frideres v. Schiltz*, 540 N.W.2d 261, 269 (Iowa 1995).

curred. This is despite the fact that Steinke remembered the conduct at issue and has suffered some noticeable psychological effects since the incidents.

Noting Steinke's reliance on *Callahan,* the district court distinguished the instant facts from the case of repressed memory by a child sexual abuse victim.

In this case, Steinke knew of the abuse he had suffered. He also knew of the various injuries he was suffering from. This was not exactly a case of repression as identified by the Court in *Callahan,* where the truth of the matter was suppressed by various factors. However, Steinke has said that he did not consider himself a victim and that he "buried" the abuse, despite retaining memory of it.

The district court went on to credit Steinke's argument that he was "barely aware of this abuse" and that the abuse "was not contemplated by him without any conscious effort." The court reasoned that unlike others in his position, "it is not completely clear that Steinke had knowledge of the abuse prior to his session in therapy." The district court ultimately decided that it was unable "to say as a matter of law that Steinke was aware of the abuse."

On appeal, the defendants argue that the district court erred in finding a genuine issue of material fact existed under the discovery rule. The defendants contend that Steinke—by his own admissions—knew each of the five incidents of alleged sexual abuse were injurious at the time they were committed. He found the incidents offensive and recalled that they caused him "discomfort" and "pain." The defendants also challenge Steinke's claim to have repressed the memories of the abuse, especially given his statement to a psychologist that he had "vivid recollections of the events" during his time in college. They argue that if any "suppres-

sion of memories" occurred it would have been after 1986, when Steinke left college, and Steinke "must be charged with knowledge of any injury" as early as 1981. Finally, the defendants argue the district court mistakenly applied a subjective standard, looking to when Steinke personally "was aware of the abuse." They correctly note the discovery rule standard is an objective one: the cause of action accrues when the plaintiff is "aware of sufficient facts to put a reasonable person on inquiry notice of a potential problem, requiring further investigation." *See Buechel v. Five Star Quality Care, Inc.,* 745 N.W.2d 732, 737 (Iowa 2008).

After careful consideration, we conclude Steinke's evidence in opposition to the summary judgment motion did not create a genuine issue of material fact regarding when he knew of his injuries and their cause. Steinke's deposition, his interrogatory responses, and his evaluation by Dr. Rogers all reveal that Steinke appreciated the harm wrought by the defendants' sexual abuse at the time they committed the acts. Steinke testified he was "terrified" following the "skinny dipping" incident on Little Spirit Lake during the summer of 1981 when he found himself on the commode in pain and bleeding from the rectum. Steinke wrote in response to an interrogatory that he was "reluctant" to be alone with Perdue during the summer of 1982, given his previous encounters with the seminarian. Steinke also wrote that after receiving threats from Perdue in 1982 Steinke decided to stay quiet about the abuse and pray "that the trauma would go away." In recounting the sexual abuse for Dr. Rogers, Steinke said he "continued to be fearful and 'disgusted' by the events but he tried to shut it out of his mind." Steinke knew he suffered from depression, anxiety attacks, and recurring nightmares

about Kurzak and Perdue starting in 1982 when he was a senior in high school.

Under the test articulated by our supreme court in *Woodroffe* and *Borchard,* Steinke's cause of action accrued at the time he allegedly suffered the abuse because he was "aware of the existence of a problem." *See Borchard,* 542 N.W.2d at 251 (refusing to apply discovery rule to cases where a traumatic injury leads to latent manifestation of harm); *see also Woodroffe,* 540 N.W.2d at 49 (" '[O]nce a person is aware a problem exists, he has a duty to investigate even though he may not have exact knowledge of the nature of the problem that caused the injury.' " (citation omitted)).

We recognize that *Callahan* carved out a tolling exception for repressed memories. *See Borchard,* 542 N.W.2d at 251 n. 2. But like plaintiff Borchard, Steinke can make no cognizable claim he repressed all memories of the alleged sexual abuse. Steinke testified he "buried" the memories of his abuse, he "tried [his] best not to remember these events," and that he was "very good at compartmentalizing that piece and not dealing with it."

We appreciate that repressed memory may not be an all-or-nothing proposition.[5] But unlike the plaintiff in *Callahan,* Steinke does not present any affidavits addressing the issue of repressed memory.

In the affidavit he does tender, psychologist Rogers concluded that only in the year or two before filing his lawsuit was Steinke "able to appreciate the recollection of the sexual abuse, which was effectively excluded from active memory and appreciation since he was a child." We view the psychologist's equivocal terminology as finding something short of repressed memory on Steinke's part.

The district court also hesitated to find that Steinke completely repressed his recollection of the alleged abuse. The court stated: "This was not exactly a case of repression as identified by the Court in *Callahan* " and noted that Steinke " 'buried' the abuse, despite retaining memory of it." In denying summary judgment on the statute of limitations ground, the court said it could not find "repression did not occur in this case."

Without input from experts on the phenomenon of repressed memory and lacking a professional opinion that Steinke in fact repressed these memories, we cannot agree that a genuine question of fact exists as to whether Steinke repressed memories of the abuse. *See Anonymous v. St. John Lutheran Church of Seward,* 14 Neb.App. 42, 703 N.W.2d 918, 926 (2005) (in summary judgment appeal, requiring expert testimony to establish that plaintiff suffers from mental disorder).

---

**5.** The following commentary highlights the gradations that may take place in the mind of someone who has suffered trauma.

[S]ome people, when confronted with painful or traumatic situations, either simply forget or actually block the feelings and/or memories associated with those situations from their conscious minds. Although the popular press has often described this as an either/or situation—memory is either completely blocked or perfectly continuous—memory blockage is probably better described as a continuum: people experience varying degrees of access to different parts of a memory at differing points in time. Variously described as "delayed recall," "repressed and recovered memory," "traumatic amnesia," or "dissociation," among other terms, the process of forgetting or losing access to a traumatic memory is still being investigated by scientists. The blocked-off memories, however they are caused, do not disappear altogether, but appear to remain stored subconsciously, at times signaling their presence in "neurotic" symptoms.

Cynthia Grant Bowman & Elizabeth Mertz, *A Dangerous Direction: Legal Intervention in Sexual Abuse Survivor Therapy,* 109 Harv. L.Rev. 549, 599 (1996).

Even if we could rely on Steinke's own assessment of his psychological condition, his testimony that he "tries [his] best not to think about [the abuse]" does not present the same situation for discovery rule purposes as a person whose memories are inaccessible. *See Doe v. Roe,* 191 Ariz. 313, 955 P.2d 951, 957 (1998) ("In laymen's terms, memory repression is the involuntary blocking of memory so that the memory remains stored but inaccessible to the conscious mind."). Steinke's testimony does not describe an involuntary blocking of memory, but a deliberate effort on his part to forget the painful thoughts of the alleged abuse. The discovery rule as interpreted in *Borchard* does not excuse Steinke's late filing based on the fact that he was not diagnosed with PTSD until he experienced a "triggering" event decades after the alleged abuse.

Steinke admitted "vivid recollections" of the alleged abuse when he was in college, just a few years after the sexual encounters with Kurzak and Perdue. We must return to the question posed in *Chrischilles,* when the supreme court first adopted the discovery rule, and repeated in *Woodroffe,* when the court rejected a claim of repressed memory for a plaintiff who was sufficiently aware of her abuse to seek professional help:

> The question in any given case is not, What did plaintiff know of the injury done him? but, What might he have known, by the use of the means of information within his reach, with the vigilance which the law requires of him?

*Woodroffe,* 540 N.W.2d at 49 (citation omitted).

Under our existing precedent, we conclude Steinke did not employ the vigilance the law required of him to investigate the cause of his injury at the time he admittedly recalled the alleged abuse. The facts in the summary judgment record regarding Steinke's realization of the alleged abuse and his related injuries leave no room for reasonable minds to differ that his cause accrued more than two years prior to the commencement of this action. Under these circumstances, Steinke cannot benefit from tolling under the delayed discovery rule. Steinke's allegations, if true, expose despicable acts by a priest and a seminarian who used their positions of power and trust to manipulate and damage teenage boys who ardently believed in the tenets of their church and even aspired to be priests. But statutes of limitations are " 'by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay.' " *Schlote v. Dawson,* 676 N.W.2d 187, 194 (Iowa 2004) (citation omitted). Even the court-made discovery rule—which aims to provide a measure of fairness for plaintiffs who in the exercise of reasonable diligence could not have discovered their injury and its cause within the legislated time frame—has been "tempered" in its application to ensure fairness to defendants who have reasonable expectations of when exposure to liability will be terminated. *See Woodroffe,* 540 N.W.2d at 49 (citations omitted). We are constrained by prior judicial interpretations of Iowa's discovery rule to find that the statute of limitations prevents Steinke from pursuing his accusations of egregious behavior on the part of Perdue and Kurzak.

Having found the action time barred as to all three defendants, we need not address the vicarious liability claims against the Diocese. *See Murtha,* 745 N.W.2d at 712 n. 1 (declining to address parties' additional arguments when the appeal is resolved on separate basis).

**REVERSED ON CROSS–APPEAL.**