**Roger P. DUDDEN and Marcia Dudden, As Executors of the Estate of Claus P. Dudden, Plaintiffs-Appellees,**

v.

**Charles I. GOODMAN, Defendant– Appellant.**

No. 94–0235.

Court of Appeals of Iowa.

Nov. 27, 1995.

---

Brent B. Green and Scott P. Duncan of Duncan, Green, Brown, Langeness & Eckley, P.C., Des Moines, for appellant.

Allen E. Brennecke and James C. Ellefson of Welp, Harrison, Brennecke & Moore, Marshalltown, for appellees.

Considered by DONIELSON, C.J., and HABHAB and HUITINK, JJ.

HABHAB, Judge.

This case concerns the alleged legal malpractice of Charles I. Goodman in the preparation of the tax returns for the estate of Claus P. Dudden. Specifically, the plaintiffs claim Goodman failed to take the marital deduction or take advantage of the qualified terminable interest property provision (QTIP) of the will.

Claus died on May 21, 1982. Goodman probated Claus's estate, including the preparation of the estate's federal and state tax returns. Goodman filed the returns on February 3, 1983. Emma Dudden, Claus's widow, signed the returns in her capacity as the then-current executor. Goodman continued to perform legal services for Emma personally, including the drafting of a will and creation of a trust.

Emma and Marcia Dudden, the wife of Emma's nephew, Roger, visited an accountant in early 1990 concerning Emma's 1989 income tax return. Because of the questions asked by the accountant, Marcia became concerned about the taxes paid by Claus's estate. She urged Emma to seek another legal opinion.

Emma visited a trust officer at the National Bank of Waterloo in the late summer of 1992 concerning the estate's federal and state taxes. The trust officer recommended the matter be reviewed by an outside attorney, Kevin McCrindle. By a letter dated October 19, 1992, McCrindle indicated to Emma that Goodman had caused the estate to pay excess federal estate taxes and Iowa inheritance taxes by failing to take the marital deduction.

Claus's estate was reopened on August 3, 1993. Roger and Marcia Dudden were ap-

pointed as co-executors. On September 3, 1993, Roger and Marcia filed this legal malpractice action against Goodman.

Goodman filed a motion for summary judgment, claiming the action was filed after the expiration of the five-year statute of limitations. Plaintiffs resisted the motion, claiming application of the discovery rule tolled the statute and brought their action within the limitations period. The district court agreed with plaintiffs and overruled Goodman's motion for summary judgment. This case comes to us on interlocutory appeal.

## I

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R.Civ.P. 237(c); *see Farm Bureau Mut. Ins. Co. v. Milne*, 424 N.W.2d 422, 423 (Iowa 1988). The moving party has the burden to show the nonexistence of a material fact. *Milne*, 424 N.W.2d at 423. The evidence must be viewed in the light most favorable to the resisting party. *Thorp Credit, Inc. v. Gott*, 387 N.W.2d 342, 343 (Iowa 1986). The procedure is functionally akin to a directed verdict, and every legitimate inference that reasonably can be deduced from the evidence should be afforded the resisting party. *Sherwood v. Nissen*, 179 N.W.2d 336, 339 (Iowa 1970). If the motion is properly supported, however, the resisting party "must set forth specific facts showing that there is a genuine issue for trial." Iowa R.Civ.P. 237(e).

## II

Goodman contends the statute of limitations began to run when the taxes were paid in 1983. In putting forth this argument, Goodman relies heavily upon the product liability case of *Franzen v. Deere & Co.*, 377 N.W.2d 660 (Iowa 1985).[1] In *Franzen*, our supreme court stated it is the knowledge of the underlying facts which begins the statute of limitations. *Franzen v. Deere & Co.*, 377 N.W.2d 660, 662 (Iowa 1985). The person does not need to know the facts are actionable in order for the statute of limitations to begin. *Id.* "In addition, the person is charged with knowing on the date of the accident what reasonable investigation would have disclosed." *Id.*

The *Franzen* case is persuasive authority under those factual settings where the injured person discovers or in the exercise of reasonable care should have discovered the allegedly wrongful act. But we are not convinced *Franzen* applies to this case. In *Franzen*, Franzen knew he was injured when his arm was caught in the revolving beater mechanism. He had a duty to investigate once he knew he had been injured. *Id.* However, the executor in the present case did not know the estate had been injured when the taxes were paid in 1983. There was nothing to put her on notice. The executor had a right to rely on the superior skill and knowledge of her attorney Goodman. *See Millwright v. Romer*, 322 N.W.2d 30, 34 (Iowa 1982). In this respect, and as discussed in subsequent paragraphs, we conclude the rule set out in *Franzen* is not applicable to this case.

## III

Both parties argue strenuously as to how *Millwright* applies to the present case. In *Millwright*, a trust created by the will was terminated due to a violation of the rule against perpetuities.[2] Beneficiaries under

---

**1.** The plaintiff in *Franzen* was injured in a farming accident on June 25, 1979. *Franzen v. Deere & Co.*, 377 N.W.2d 660, 661 (Iowa 1985). The plaintiff, Franzen, caught his arm in a revolving beater mechanism while working inside a forage wagon. *Id.* In January 1981, while seeking advice on a will, Franzen was told by an attorney he might have a products liability claim based upon the accident. *Id.* at 662. Franzen filed such a claim in March 1982. *Id.* at 661. The supreme court found summary judgment was

proper since the discovery rule could not be applied. *Id.*

**2.** No attorney-client relationship ever existed between the parties in *Millwright*. *Millwright v. Romer*, 322 N.W.2d 30, 31 (Iowa 1982). The will was admitted to probate in 1945. *Id.* The testator intended to provide a life estate for his children with a remainder going to their issue. *Id.* These interests were to take effect after a life estate to the testator's wife. *Id.* To effectuate

the will brought a legal malpractice action against the attorney who drafted the will. A motion for summary judgment was granted based on a finding the action was barred by the statute of limitations. *Millwright*, 322 N.W.2d at 31.

Our supreme court found the discovery rule[3] applies to statute of limitation questions in legal malpractice claims. *Id.* at 32. The court also found the plaintiffs' action was barred by the statute of limitations since, under the vigilance which the law requires, they should have known the will violated the rule against perpetuities. *Id.* at 33. "Every citizen is assumed to know the law and is charged with knowledge of the provisions of statutes." *Id.* More importantly, the court then discussed three reasons why there could not be an exception to this rule under the facts in *Millwright.*

> None of the reasons for application of the discovery rule to legal malpractice actions support an exception to the presumption of knowledge of the law *in this present action by beneficiaries based upon a negligently drafted will.* One reason underlying the discovery rule in legal malpractice actions is that a client has a right to rely upon the superior skill and knowledge of his attorney. That reason does not appear here because defendant was never plaintiff's attorney. He had no part in the administration of decedent's estate or trust, and had no prior or subsequent legal relationship with plaintiffs.
>
> A second reason underlying the discovery rule in legal malpractice is that the absence of such a rule denigrates the duty of the attorney to make full and fair disclosure to the client. There is no attorney-client relationship here, and no such duty of disclosure.

> A final reason for the rule takes into account two additional aspects of the client-attorney relationship.... First, the laymen had an ability to detect the mistake or misapplication in the present case. The executor of the estate was represented by an attorney. This person could have provided the notice that the will violated section 558.68. Second, the plaintiffs had an opportunity to see the defect. The use of a new attorney for probate was an opportunity for discovery.

*Millwright*, 322 N.W.2d at 34 (emphasis added) (cites omitted).

In the present case, the parties disagree as to whether there should be an exception to the presumption of knowledge which would effectively toll the statute of limitations. The court in *Millwright* found no exception should be allowed under the facts in that particular case. The case before us, however, provides a different set of facts which allows for an exception to be applied.

There is a clear attorney-client relationship in this case which did not exist in *Millwright.* In *Millwright*, the beneficiaries of a will brought a claim against the attorney who drafted the will. No other relationship existed between the parties. In the case before us, not only was defendant the attorney for the estate, but he also performed legal services for the executor personally during the course of probating the estate and after the estate was closed.

All three reasons discussed in *Millwright* support an exception to the presumption of knowledge of the law in an action where the executors for the estate claim errors were made by the attorney for the estate in calculating the taxes owed by the estate. The original executor had every right to rely on

---

this intent, the will set up a trust. *Id.* The trust creating the life estate and remainder interests for the children and their issue was opened in 1955 after the death of the testator's wife. *Id.* The defendant attorney was not involved in the administration of the trust, and annual reports for the trust were filed through 1977. *Id.* In 1978, the district court upheld a challenge to the trust on grounds it violated the rule against perpetuities. *Id.* As a result, the trust providing a life estate to one plaintiff and a remainder to the other plaintiffs was terminated. *Id.* The plain-

tiffs then brought the legal malpractice action in 1980. *Id.*

3. The discovery rule provides, "The limitation statute or statutes in malpractice cases do not start to run until the date of discovery, or the date when, by the exercise of reasonable care, plaintiff should have discovered the wrongful act." *Millwright*, 322 N.W.2d at 33; *Chrischilles v. Griswold*, 260 Iowa 453, 462, 150 N.W.2d 94, 100 (1967).

attorney Goodman's skill and knowledge.[4] Further, to hold otherwise would denigrate the duty of Goodman and attorneys in a similar position to make full and fair disclosure. Finally, as was not the case in *Millwright,* the executor did not have a separate attorney to detect any mistake made by Goodman.

## IV

As previously noted, the statute of limitations does not begin to run until the injured party knows or can be charged with the knowledge of the existence of his cause of action. *Baines v. Blenderman,* 223 N.W.2d 199, 202–03 (Iowa 1974). Under Mrs. Dudden's version of the events, she had no reasonable means of knowing the estate's attorney may have caused the estate to pay excessive federal estate and Iowa inheritance taxes. From the inception, she had a right to rely on defendant's superior knowledge and this right continued until at least the early part of 1990. This is particularly true here, for the attorney-client relationship continued after the estate was closed.

As previously noted, Mrs. Dudden used defendant exclusively as her personal attorney and considered him to be her attorney until at least 1992. According to her version, the earliest date the estate could be charged with knowledge of the existence of the cause of action was early in 1990 when the visit with the accountant took place. It was then Mrs. Dudden was urged to seek another legal opinion.

Like the trial court, we believe the principles set out in *Baines* should apply. In *Baines,* plaintiff lost vision in his right eye after back surgery performed in March 1970. Our supreme court held the statute did not begin to run when plaintiff discovered he had lost his sight. It was held he had a right to rely on his doctor's advice the blindness was a temporary post-operative side effect. The court stated the issue was "whether plaintiff discovered, or in the exercise of reasonable care should have discovered, more than two years before this action was brought that his injury was caused by the negligence of these defendants." *Id.* at 203. Significant in *Baines* is the fact plaintiff, from the date of his back injury to May 15, 1970, continued to consult with his physician and was always assured his vision "would come around." It was not until July 15, 1970, he learned otherwise.

Although the factual setting in *Baines* differs somewhat from the factual setting in the case at bar, they are somewhat similar to the extent Mrs. Dudden not only relied on defendant to perform the necessary legal services for the estate, but she also relied upon his judgment in attending to her personal legal services during the probate proceedings and after the estate was closed. We find this continuous attorney-client relationship provides a basis for applying the exception considered in *Millwright.*

In the more recent case of *Estate of Montag v. T H Agriculture & Nutrition Co.,* 509 N.W.2d 469 (Iowa 1993), it is stated:

> If a plaintiff is unaware of his *injury* within the time provided by a statute of limitations, the plaintiff may extend the time for suit under our delayed discovery rule. Under that rule, the statute does not begin to run until the plaintiff knew, or in the exercise of reasonable care should have known, that he had a *cause of action.* *Franzen v. Deere & Co.,* 377 N.W.2d 660, 662 (Iowa 1985).
>
> . . . .
>
> Under our cases, the statute of limitations begins to run when a plaintiff first becomes aware of facts that would prompt a reasonably prudent person to begin seeking information as to the problem and its cause. " . . . . The period begins at the time the person is on inquiry notice." *Franzen,* 377 N.W.2d at 662.

*Montag v. T H Agric. & Nutrition Co.,* 509 N.W.2d 469, 470 (Iowa 1993) (emphasis added).

---

4. Goodman contends the executors should be held to a standard of care requiring prudence and diligence which a person of ordinary judgment would be expected to bestow upon his own affairs. *See In re Estate of Wiese,* 257 N.W.2d 1, 6 (Iowa 1977). We agree with the standard of care asserted by Goodman. However, we do not believe this standard of care negates the executor's right to rely on their attorney's skill and knowledge.

Our supreme court, in *Baines*, quoted with approval the following statement from *Wilkinson v. Harrington*, 104 R.I. 224, 243 A.2d 745, 753 (1968):

"To require a man to seek a remedy before he knows of his rights, is palpably unjust. Under such circumstances, in order for a patient to secure and protect his legal rights against doctors for malpractice, the patient would be required to submit himself to complete examinations by a series of independent physicians after every operation or treatment he received from the physician of his first choice. The unreasonableness of such a result is self-evident."

*Baines*, 223 N.W.2d at 203.

■ Where, as here, there is a continuous attorney-client relationship, it would be palpably unjust and quite unreasonable to require a client of a lawyer to obtain a second opinion on every professional decision the lawyer makes.

### V

As was previously stated, the discovery rule is applied in legal malpractice claims. We find the continuous attorney-client relationship in this case requires that an exception to the presumption of knowledge of the law be applied. We form no opinion what the result might be if this continuous relationship did not exist. That factual setting is not before us.

The district court's denial of the motion for summary judgment was proper. We affirm the decision of the district court, and remand the case for further proceedings.

**AFFIRMED.**