# IN THE COURT OF APPEALS OF IOWA

No. 17-0151
Filed January 10, 2018

**MICHELLE R. SKADBURG,**
    Plaintiff-Appellant,

**vs.**

**GARY GATELY and WHITFIELD & EDDY, P.L.C.,**
    Defendants-Appellees.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Rustin T. Davenport, Judge.

Michelle Skadburg appeals from summary judgment granted to the defendants in this legal-malpractice action. **REVERSED AND REMANDED.**

Peter C. Riley of Tom Riley Law Firm, P.L.C., Cedar Rapids, for appellant.

Lylea Dodson Critelli and Nick V. Critelli Jr. of Critelli Law, P.C., Des Moines, for appellees.

Considered by Danilson, C.J., and Tabor and McDonald, JJ.

**DANILSON, Chief Judge.**

Michelle Skadburg appeals from summary judgment granted to the defendants in this legal-malpractice action. We conclude there remains a genuine issue of material fact as to when Skadburg knew of the cause of action and, thus, when the statute of limitations on this action began to run. Summary judgment should not have been granted, and we reverse and remand.

**I. Undisputed Facts.**

The following facts are not in dispute. Barbara Haffner died on August 20, 2008. Skadburg is Haffner's sole heir and she was the designated beneficiary of Haffner's life insurance policy ($20,000) and a 401k account ($87,054.65).

On November 6, 2008, Skadburg was appointed as administrator of Haffner's estate and Gary Gately of Whitfield & Eddy, P.L.L.C. was designated as attorney for the administrator.

Upon the advice of counsel, Skadburg used funds she received as the designated beneficiary of exempt proceeds to pay Haffner's outstanding bills and other expenses.[1] Ultimately, it was determined the estate was insolvent as the

---

[1] In her answer to an interrogatory to "Please identify every bill or debt of the Haffner Estate you claim to have paid with funds exempt from estate debts, and for each provide the following information: . . . ."
Skadburg responded:
It is impractical to answer this question for each payment of a bill or debt as the answer to each subpart is the same for about every payment. If the answer to a subpart differs based on particular payments, this will be identified.

        . . . .

        (d) Mr. Gately told me to pay all of my Mother's debts and keep the rest of the money that was left. He told me I did not have to open an estate account since I was the only heir and that it could all be paid through my personal bank account. I did not pay anything until Mr. Gately told me to do so.

debts exceeded the assets. Because the estate and Skadbury, as the administrator, only had to pay the estate's debts to the extent of the assets, her use of her exempt funds to pay her mother's debts gave rise to her claim of malpractice.

With respect to the payment of debts, Skadburg and Gately had several communications by email during the pendency of the estate administration. In a January 30, 2009 email to Gately, Skadburg wrote:

> Anyway, this news today was kind of sickening for me. I would like to think I would have done the right thing and paid off her debts even if I wasn't legally obligated to . . . ,
> I should have given you the entire list of debts and asked for more specific advice on what to do, but I took you at your word to pay the debts and did that. Anyway it was her money and her debt and no use second guessing now as they have been paid and that is that.

> In a December 30, 2009 email to Gately, Skadburg wrote,

> As far as the fees, Tom [Reavely] had told me when this started that he would charge me $200-300 to do this. I do realize there has been more work involved so I am willing to negotiate on this, but I will be honest, not willing to pay the usual fee. . . . It seems there has been miscommunication in all of this. Paying off mom's debt with money that should not have been part of the estate was one of the issues that has arisen. Gary and I have talked through this and what is done is done, but please take these kinds of things into consideration when setting the fee.

---

> (e) The exempt proceeds were deposited in my personal account and commingled with my personal funds. Expenses were paid out of my personal account.
> . . . .
> (g) At the time the estate was opened, Mr. Gately told me to pay all bills and I could keep the remaining money. In December of 2008, he told me to pay the U.S. Bank credit card and that I could forward any other creditors to him. I told him all other bills had been paid.

In a March 26, 2010 note to Gately, Skadburg wrote, "One other question—is any of the money paid to the creditors refundable since those should not have been paid out of the estate assets?"

On August 18, 2010, the probate court entered an order approving the administrator's final report, discharging the administrator, and closing the estate.

In a letter dated August 31, 2010, Gately wrote to Skadburg: "Enclosed for your records is the Order of the Court Approving Final and Supplemental Final Reports and discharging Administrator. In essence, this is the final step and the estate is now closed and you are discharged as the Administrator."

On August 19, 2015, Skadburg filed a petition at law asserting Gately was negligent in his representation of the administrator. Gately answered, asserting the action was barred by Iowa Code section 614.1 (2007), which provides a five-year statute of limitations. Gately filed a motion for summary judgment, asserting the action was filed beyond the statute of limitations. Gately asserted the latest date on which the action accrued was August 18, 2010, and therefore, even calculated most favorably to Skadburg, the August 19, 2015 filing of the action was one day after the limitations period had run.

Skadburg resisted, asserting the petition was "submitted to the clerk of court on August 18, 2015," and Gately represented Skadburg "with regard to the probate of the Estate . . . until August 31, 2010."

The district court concluded Skadburg knew Gately had given her incorrect advice regarding the administration of the estate on December 29, 2009, as evidenced by her email. Alternatively, the court concluded she demonstrated actual or imputed knowledge that Gately had given her incorrect

advice on March 26, 2010, as evidenced by her statement in the email—"since those should not have been paid out of the estate assets." In either event, the five-year statute of limitations had run before the filing of the suit.

Skadburg appeals, asserting she was not aware of all elements of her legal-malpractice claim until after Gately's representation ceased and the principle of continuous representation avoids the statute of limitations.

## II. Scope and Standard of Review.

> We review grants of summary judgment for correction of errors at law. *Vossoughi v. Polaschek*, 859 N.W.2d 643, 649 (Iowa 2015). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Amish Connection, Inc. v. State Farm Fire & Cas. Co.*, 861 N.W.2d 230, 235 (Iowa 2015). We view the facts in the light most favorable to the nonmoving party. *Veatch v. City of Waverly*, 858 N.W.2d 1, 6 (Iowa 2015).

*Barker v. Capotosto*, 875 N.W.2d 157, 161 (Iowa 2016).

## III. Discussion.

"Legal malpractice consists of the failure of an attorney 'to use such skill, prudence and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.'" *Millwright v. Romer*, 322 N.W.2d 30, 32 (Iowa 1982) (citation omitted). A party seeking to establish a prima facie claim of legal malpractice must establish "(1) a duty arising from the established existence of an attorney-client relationship; (2) the attorney breached that duty; (3) the attorney's breach was the proximate cause of injury to the client; and (4) the client suffered actual damage, injury, or loss." *Barker*, 875 N.W.2d at 161.

A legal-malpractice action is subject to a five-year statute of limitations. *See* Iowa Code § 614.1(4); *Vossoughi*, 859 N.W.2d at 648. "Generally, a claim accrues when 'the wrongful act produces injury to the claimant.'" *K & W Elec., Inc. v. State*, 712 N.W.2d 107, 116 (Iowa 2006) (citation omitted). However,

> [t]he discovery rule tolls the statute of limitations until the plaintiff has discovered "the fact of the injury and its cause" or by the exercise of reasonable diligence should have discovered these facts. *K & W Elec., Inc.*, 712 N.W.2d at 116 (citation omitted); *see also Nixon v. State*, 704 N.W.2d 643, 646 (Iowa 2005) (applying discovery rule to claim of fraudulent misrepresentation). Once a claimant learns information that would inform a reasonable person of the need to investigate, the claimant "'is on inquiry notice of all facts that would have been disclosed by a reasonably diligent investigation." *K & W Elec.*, 712 N.W.2d at 117 (citation omitted). A claimant can be on inquiry notice without knowing "the details of the evidence by which to prove the cause of action." *Vachon v. State*, 514 N.W.2d 442, 446 (Iowa 1994).

*Hallett Constr. Co. v. Meister*, 713 N.W.2d 225, 231 (Iowa 2006).

Here, Gately argues the alleged wrongful act produced Skadburg's injury in 2008, long before this action was begun. And even if the discovery rule tolled the statute of limitations for a time, this record demonstrates Skadburg discovered the fact of injury and its cause by December 29, 2009.

We must note, however, a client has a "right to rely upon the superior skill and knowledge of his attorney." *Vossoughi*, 859 N.W.2d at 650 (quoting *Millwright*, 322 N.W.2d at 34); *see also Neylan v. Moser*, 400 N.W.2d 538, 542 (Iowa 1987). Moreover,

> a litigant who believes she may have been injured through her attorney's negligence should not be forced to choose between (a) sabotaging her relationship with her attorney during ongoing representation by filing a legal malpractice claim, and (b) waiving her opportunity to bring the claim before the statute of limitations extinguishes it.

*Vossoughi*, 859 N.W.2d at 650 (citing with approval *Amfac Distrib. Corp. v. Miller*, 673 P.2d 795, 799 (Ariz. Ct. App. 1983) ("Under our rule, a client will not have to challenge and question every decision made by his attorney or routinely double check his attorney's conduct. . . .  Thus, the client will have peace of mind to allow the legal process to work fully and finally in hopes that his position will ultimately be vindicated and will not be forced to disrupt his relationship with his lawyer to preserve what he thinks may be a valid malpractice claim.")).

In 2012, Vossoughi and a company he owned sued an attorney who had prepared documents in 2006 in connection with the sale of real and personal property, claiming the attorney negligently performed legal services in negotiating, drafting, and providing legal advice.  *Id.* at 647-48.  The district court concluded the action was time-barred.  *Id.*  The supreme court noted:

> Legal malpractice claims sound in negligence.  Claims based on negligence do not accrue, and the statute of limitations does not begin to run, until the injured plaintiff "has actual or imputed knowledge of all the elements of the action."  *Franzen* [*v. Deere & Co.*], 377 N.W.2d [660,] 662 [(Iowa 1985)]; *accord Buechel v. Five Star Quality Care, Inc.*, 745 N.W.2d 732, 736 (Iowa 2008); *Stanley L. & Carolyn M. Watkins Trust v. Lacosta*, 92 P.3d 620, 628 (Mont. 2004) ("[T]he statute of limitations in a legal malpractice action does not begin to run until . . . all elements of the legal malpractice claim, including damages, have occurred.").

*Id.* at 649.  The supreme court concluded Vossoughi and his company did not suffer actual injury until "at least February 2008 when the buyers defaulted on their contract payments."  *Id.* at 658.  Thus, the supreme court found the malpractice claim was not time-barred.  *Id.*

In another legal-malpractice case, the supreme court found the statute of limitations barred a claim because the "plaintiffs, under the vigilance which the

law requires of them, should have known that the will violated the rule against perpetuities." *Millwright*, 322 N.W.2d at 33. The court observed, "Every citizen is assumed to know the law and is charged with knowledge of the provisions of statutes." *Id.* The court discussed three reasons underlying the discovery rule in legal-malpractice cases: (1) "that a client has a right to rely upon the superior skill and knowledge of [their] attorney"; (2) "that the absence of such a rule denigrates the duty of the attorney to make full and fair disclosure to the client"; and (3) that the client does not have the ability or opportunity to detect the mistake. *Id.* at 34. In *Millwright*, however, "[n]one of the reasons for application of the discovery rule to legal malpractice actions support an exception to the presumption of knowledge of the law in this present action by beneficiaries based upon a negligently drafted will." *Id.* The court's conclusion was supported by the fact that the attorney being sued did not represent the plaintiffs; because there was no attorney-client relationship, there was no duty of full and fair disclosure; and finally the will beneficiaries, even as laymen, "had an ability to detect the mistake." *Id.*

But, in *Dudden v. Goodman*, 543 N.W.2d 624, 625 (Iowa Ct. App. 1995), the plaintiffs were executors of an estate who later sued the attorney who had prepared the tax returns for the estate. The attorney moved for summary judgment based on the statute of limitations. *Dudden*, 543 N.W.2d at 626. This court concluded the exception to the presumption of knowledge was justified. *Id.* at 627-28. We noted, "Where, as here, there is a continuous attorney-client relationship, it would be palpably unjust and quite unreasonable to require a

client of a lawyer to obtain a second opinion on every professional decision the lawyer makes." *Id.* at 629.

In her brief, Skadburg does not dispute that the alleged negligence of Gately "occurred from the time of her appointment on November 6, 2008, through December of 2008 when Skadburg and Gately discussed" a credit card bill and "Gately told her to pay that bill and refer all creditors to him, and Skadburg told Gately all bills were paid." Yet, Skadburg contends she had no reason to question Gately's actions while he represented her as administrator.[2]

In a supplemental response to Gately's motion for summary judgment, Skadburg asserted:

> Gately never advised Skadburg that her ability to pay debts until four months after the second publication were very limited, and in fact told her to pay all the debts and keep the money that was left. Gately never told Skadburg that the proceeds from the 401k and life insurance were exempt from any claims against the Haffner Estate, that Skadburg could keep those funds, and that she could keep the life insurance and 401k proceeds.

---

[2] Skadburg asserts Gately had a duty to advise her not to pay claims until after four months from the second publication of the estate notice and to inform her that the mistake in payments was due to his failure to properly advise her. She points to Iowa Code section 633.433, entitled "Payment of debts and charges before expiration of four-month period":

> As soon as the personal representative is possessed of sufficient means over and above the other costs of administration, the personal representative shall pay any allowance made by the court for the surviving spouse and children of the decedent, and may pay the expenses of funeral, burial, and last illness. Prior to the expiration of four months after the date of the second publication of notice to creditors, the personal representative shall pay other debts and charges against the estate as the court orders, and the court may require bond or other security to be given by the creditor to refund such part of the payment as may be necessary to make payment in accordance with this probate code. All payments made by the personal representative without order of court are at the personal representative's own peril.

In support of her assertion, Skadburg filed her answer to interrogatory No. 2, which asked for the basis of her claim that Gately was negligent in his representation:

> I learned after retaining new counsel that under Iowa law claims against the estate, which would include my Mother's debts, should not be paid until after four months from the second publication of the estate notice, except under certain circumstances debts for funeral, burial and last illness expenses, or other claims if a judge orders a claim can be paid. I am told this is stated in Probate Code Sections 633.433 and 434. Mr. Gately never advised me of this, or that I could keep the life insurance and 401k proceeds, and instead told me to pay my Mother's bills, and keep the rest of the money. Mr. Gately never asked me to find out what the bills were and what assets my Mother had that would be subject to estate claims. Mr. Gately should have found out the amounts of the bills or at least that the bills exceeded what was in my mother's bank account, when he first talked to me, and he should have told me not to pay any bills until the period for filing claims had passed.

She also presented a letter from an attorney, Matthew D. Persall, who opined:

> From the review of the probate inventory filed in the estate of Barbara J. Haffner on December 22, 2008, it does not appear that an estate should have ever been opened in the first place. The property listed on Schedule C and F of the probate Inventory could have been transferred by affidavit under Iowa Code § 633.356. The life insurance policy on Schedule D and the 401(k) on Schedule I would not be subject to the administration of the probate court for payment of claims in the estate.
> The attorney should have also advised against paying any debts of the estate before the expiration of the four-month period without court order. *See* Iowa Code § 633.433. It appeared that this estate may have been insolvent. It would be a deviation from the standard of care to advise a client to pay any claims if the estate appeared to be insolvent.

Gately suggests Skadburg had a duty to investigate when she became aware "a problem existed" as "[o]ne purpose of inquiry is to ascertain its exact nature." *Woodroffe v. Hasenclever*, 540 N.W.2d 45, 48-49 (Iowa 1995).

Skadburg asserts she "did not know the critical element of her claim, specifically that her lawyer breached his duty when he failed to advise her that she should not pay debts during the claim period, and instead advised Skadburg to pay her mother's debts." She also contends Gately "stood mute" when Skadburg accepted blame for paying bills with exempt funds, which silence constitutes fraudulent concealment. The district court found Skadburg had failed to demonstrate any genuine issue of material fact establishing a claim of fraudulent concealment.

In any event, Skadburg asserts she was entitled to rely upon her attorney's advice and she had no duty to inquire while that representation existed.

The district court rejected Skadburg's claim that the "continuing representation doctrine" avoided the limitations bar. The court observed:

> The court does not find that the continuing representation doctrine would be applicable in the present matter. This is not a situation where the individual was harmed, and did not learn of it until years later, all the while retaining the attorney who caused the harm. Rather, [Skadburg] learned of the mistake/negligence prior to the cessation of the attorney-client relationship. Furthermore, the Iowa Supreme Court has not extended the continuous treatment rule in doctor-patient relationships to other relationships where the individual had notice of the negligent actions prior to the termination of the relationship. *Cedar Rapids Lodge & Suites, L.L.C. v. JFS Dev., Inc.*, 789 F.3d 821, 826 (8th Cir. 2015) ("The Iowa court, however, has declined to apply the continuous treatment rule when the plaintiff had notice of negligence prior to the termination of treatment . . ."); *see also Ratcliff v. Graether*, 697 N.W.2d 119, 125 (Iowa 2005) ("the doctrine does not apply when the plaintiff, as here, is on inquiry notice . . .").

The district court ruled that where, as here, the client learned of the mistake/negligence prior to the cessation of the attorney-client relationship; the client was on inquiry notice.[3] *See Franzen*, 377 N.W.2d at 662.

We conclude, however, Skadburg as administrator, was entitled to rely upon the advice of counsel, and "it would be palpably unjust and quite unreasonable" to require her to obtain a second opinion while that relationship lasted. *Dudden*, 543 N.W.2d at 629. Here, Skadburg was aware of the error in prematurely paying debts but there is a genuine issue of material fact on the issue of when she knew of the cause of action. *See id.* at 628 ("[T]he statute of limitations does not begin to run until the injured party knows or can be charged with the knowledge of the existence of [their] cause of action.").

The parties argue about when the attorney-client relationship ended. Gately urges that the relationship ended with the closing of the estate by order dated August 18, 2010. If accepted, Gately's position would require a finding the statute of limitations had run the day before the case was filed.

Skadburg, on the other hand, maintains the attorney-client relationship continued until August 31, 2010, the date of the letter Gately advised her: "Enclosed for your records is the Order of the Court Approving Final and

---

[3] *Franzen*, 377 N.W.2d at 662 states:

> Under the discovery rule, the statute of limitations begins to run when the injured person discovers or in the exercise of reasonable care should have discovered the allegedly wrongful act. *Chrischilles v. Griswold*, 150 N.W.2d 94, 100 (Iowa 1967). "The question in any case is not, What did the plaintiff know of the injury done him? but, What might he have known, by the means of information within his reach, with the vigilance which the law requires of him?" *Id.* The rule is based on the theory that a statute of limitations should not bar the remedy of a person who has been excusably unaware of the existence of the cause of action. *Flynn v. Lucas Cty. Mem'l Hospital*, 203 N.W.2d 613, 616 (Iowa 1973).

Supplemental Final Reports and discharging Administrator. In essence, this is the final step and the estate is now closed and you are discharged as the Administrator." We find Skadburg has the better position. For the same reasons a client is entitled to rely upon counsel's superior knowledge, a client's potential malpractice action should not be precluded by the termination of the attorney-client relationship before being given notice it has ended.

There is a genuine issue of material fact as to when Skadburg had knowledge of her cause of action and, if she did not, the statute of limitations would not have begun until August 31, 2010. This case was filed within five years of August 31, 2010. Because there remains a genuine issue of material fact, the court erred in granting summary judgment, and we reverse and remand for further proceedings.

**REVERSED AND REMANDED.**

Tabor, J., concurs; McDonald, J., dissents.

**MCDONALD, Judge** (dissenting)

I dissent. Skadburg's claim is barred by the statute of limitations. There is no disputed question of fact that needs to be resolved in reaching that conclusion. The statute of limitations for a claim of legal malpractice is five years. *See* Iowa Code § 614.1(4) (2015); *Venard v. Winter*, 524 N.W.2d 163, 166 (Iowa 1994) (holding five-year statute of limitations applied to claim of legal malpractice). Skadburg concedes the alleged negligence in this case occurred "from the time of her appointment on November 6, 2008 through December of 2008." The petition was filed almost seven years later in August of 2015. The plaintiff admits her petition "was filed more than five years after the acts of negligence." Her untimely claim is barred.

Application of the discovery rule does not avoid the bar. "[T]he discovery rule applies to statute of limitation questions in legal malpractice claims." *Dudden v. Goodman*, 543 N.W.2d 624, 627 (Iowa Ct. App. 1995). In *Dudden*, this court stated "the statute of limitations does not begin to run until the injured party knows or can be charged with the knowledge of the existence of [her] cause of action." *Id.* at 628. In that case, we held the discovery rule tolled the statute of limitations because "the executor in the . . . case did not know the estate had been injured . . . . There was nothing to put her on notice." *Id.* at 626. We further noted the executor "had no reasonable means of knowing the estate's attorney may have caused the estate to pay excessive federal estate and Iowa inheritance taxes." *Id.* at 628. Unlike the plaintiff in *Dudden*, there is no dispute Skadburg had actual and inquiry notice of her cause of action more than five years prior to filing. On December 30, 2009, Skadburg sent an email to counsel

and cited counsel's erroneous advice and resulting injury as a point of leverage in contesting the fees. She wrote, "[B]ut I will be honest, not willing to pay the usual fee . . . . It seems there has been miscommunication in all of this. Paying off mom's debt with money that should not have been part of the estate was one of the issues which has arisen." In March 2010, Skadburg wrote another email to counsel asking whether "any of the money paid to other creditors refundable since those should not have been paid of the estate assets?" Again, unlike *Dudden*, the plaintiff in this case explicitly expressed her awareness of the bad advice and resulting injury. Because Skadburg had actual knowledge of the alleged breach and injury by March 2010, at the latest, application of the discovery rule does not avoid the bar.

I disagree with my colleagues' reading of *Vossoughi v. Polaschek*, 859 N.W. 2d 643, 650 (Iowa 2015). That case does not support Skadburg's claim; it actually forecloses the claim. In that case, the supreme court held "the statute of limitations does not begin to run on a legal malpractice claim until the cause of action accrues. The cause of action accrues when the client sustains an actual, nonspeculative injury and has actual or imputed knowledge of the other elements of the claim." *Vossoughi*, 859 N.W.2d at 652. A party has imputed knowledge when the party has inquiry notice of the claim. *See id.* at 652 n.4. "A party is placed on inquiry notice when a person gains sufficient knowledge of facts that would put that person on notice of the existence of a problem or potential problem." *Id.* The supreme court further held the plaintiff's claim was not barred by the statute of limitations because, although the negligence occurred at an earlier date, the negligence did not cause injury in the form of monetary damages

until a later date. *See id.* at 654. It was this later date on which the claim finally accrued because the plaintiff sustained an "actual, nonspeculative injury." *See id.* Unlike that case, here it is not disputed that Skadburg suffered an actual, nonspeculative injury when she paid the estate's debts in 2008. It is also not disputed that Skadburg had actual knowledge of the alleged breach of duty. Skadburg told Gatley "no use second guessing now as [the debts] have been paid and that is that." Thus, pursuant to *Vossoughi*, Skadburg's claim accrued, at the latest, in March 2010, which was more than five years prior to the date upon which her petition was filed.

In my view, Skadburg implicitly acknowledges her claim is barred by the statute of limitations. She does not even claim that her attorney's advice to pay the estate's debts with non-estate assets was negligent. Instead, she claims the attorney was negligent because he failed to advise her on the appropriate time to pay such debts. Specifically, she claims he should have told her not to pay the claims "until four months after the second publication of the estate notice." She has framed her claim this way because the more direct claim—that her attorney gave her bad advice regarding the payment of estate debts with non-estate assets—is clearly barred by the statute of limitations. I would conclude Skadburg's more limited claim is also barred by the statute of limitations because the supreme court has disallowed such jiggery-pokery to avoid the statute of limitations. "Our law does not allow the splitting of a cause of action, and any effort to do so to avoid the commencement of the statute of limitations would be inconsistent with the purpose of cutting off stale claims." *Rathje v. Mercy Hosp.*, 745 N.W.2d 443, 458 (Iowa 2008).

Skadburg's claim or claims are barred by the statute of limitations.  To the extent this matter is being remanded for further proceedings, the only claim presented is the claim that Skadburg's lawyer should have told her not to pay the claims "until four months after the second publication of the estate notice."